UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| AD HOC SHRIMP TRADE ACTION COMMITTEE,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>UNITED STATES,  )<br>)<br>Defendant,  )<br>)<br>and  )<br>)<br>ANDAMAN SEAFOOD CO., LTD., ET AL.,  )<br>)<br>Defendant-Intervenors.  ) | Court No. 10-00297<br><br>Hon. Donald C. Pogue, Chief Judge |

**AD HOC SHRIMP TRADE ACTION COMMITTEE'S STATEMENT OF THE ISSUES**

In accordance with the Court's Orders dated November 2, 2010 and November 23, 2010, Plaintiff Ad Hoc Shrimp Trade Action Committee ("AHSTAC" or "Plaintiff") hereby provides a statement of the issues that AHSTAC has challenged in this appeal.

**A. Issue Number 1: Reliance on "Type 3" Import Data for Selection of Mandatory Respondents in the Review**

1. Statement of the Issue

The United States Department of Commerce, International Trade Administration ("Commerce") erroneously relied upon data obtained from United States Customs and Border Protection ("CBP") regarding import entries designated as "Type 3" imports by the importer of record as the basis for the selection of mandatory respondents in the underlying administrative review.

2.   <u>Type of Claim, Statutory or Regulatory Basis for Claim and Standard of Review</u>

<u>Legal:</u>  Commerce's reliance on "Type 3" import data to select mandatory respondents in the underlying administrative review was unsupported by substantial evidence on the record and was otherwise not in accordance with law.  19 U.S.C. § 1516a(b)(1)(B)(i) (2000).

In the proceeding below, AHSTAC requested that Commerce issue quantity and value ("Q&V") questionnaires and demonstrated that deficiencies in the "Type 3" import data obtained from CBP made these data an unreliable basis for selecting mandatory respondents in the administrative review.  <u>See</u> Letter from Dewey & LeBoeuf to the U.S. Department of Commerce, Case No. A-549-822 (Mar. 31, 2009), P.R. 18; Letter from Dewey & LeBoeuf to the U.S. Department of Commerce, Case No. A-549-822  (Apr. 17, 2009), P.R. 37.   Following Commerce's determination to not issue Q&V questionnaires and rely exclusively on "Type 3" CBP import data for the selection of mandatory respondents (U.S. Department of Commerce's Internal Memorandum from H. Phelps to J. Maeder, Case No. A-549-822 (May 13, 2009), P.R. 57), AHSTAC reiterated its objections to reliance on these data in its case brief to the agency.  Brief from Picard Kentz & Rowe LLP to the U.S. Department of Commerce, Case No. A-549-822 (Apr. 14, 2010), pp. 1-9, P.R. 210 ("AHSTAC Case Brief").

In this case, as in previous administrative reviews conducted regarding the antidumping duty orders on certain frozen warmwater shrimp, Commerce declared that "Type 3" CBP import data were reliable, provided an extremely limited amount of time to parties to specifically demonstrate that the data released to parties were not reliable, and dismissed AHSTAC's objections based on a purported failure of Plaintiff to provide specific evidence that the CBP data are inaccurate.  <u>See</u> Decision Memorandum, A-549-822, ARP 08-09 (Aug. 31, 2010) at 9-11, available at http://ia.ita.doc.gov/frn/summary/THAILAND/2010-22376-1.pdf ("ID

Memorandum"). As such, Commerce's reliance on "Type 3" CBP import data in the underlying review presents at least two legal issues that demonstrate the agency's error.

First, because Commerce elected to rely upon "Type 3" CBP import data in the underlying administrative proceeding and declined to rely on information derived from the responses to Q&V questionnaires, Commerce's decision was arbitrary and, thus, not in accordance with law pursuant to the standard of review applied in SKF USA Inc. v. United States, 263 F.3d 1369 (Fed. Cir. 2001). Addressing a similar claim arising from the preceding administrative review of the same antidumping duty order, the Court found that:

> By using CBP entry data in some reviews and Q&V questionnaires in others, Commerce is, without explanation, placing a higher burden on producers of some merchandise than on producers of other merchandise. Regardless of the reasonableness of using CBP entry data to select mandatory respondents, therefore, the Department's apparently arbitrary and inconsistent employment of this methodology is not, without more adequate explanation, inconsistent with basic principles of the rule of law. See, e.g., Green County Mobilephone, Inc. v. FCC, 765 F.2d 235, 237 (D.C. Cir. 1985) ("We reverse the [agency] not because the strict rule it applied is inherently invalid, but rather because the [agency] has invoked the rule inconsistently. We find the [agency] has not treated similar cases similarly."); Nakornthai Strip Mill Pub. Co. v. United States, ___ CIT ___, 587 F. Supp. 2d 1303, 1307 (2008) ("Agencies have a responsibility to administer their statutorily accorded powers fairly and rationally, which includes not treating similar situations in dissimilar ways." (quotation and alteration marks and citation omitted)).

Pakfood Public Co. Ltd. v. United States, 2010 Ct. Intl. Trade LEXIS *13-14, Slip. Op. 10-99 (Sept. 1, 2010).

Second, Commerce's reliance on "Type 3" CBP data is not reasonable as this reliance fails to meet the statutory requirement of 19 U.S.C. § 1677f-1(c)(2)(B) (2000) that the agency select "exporters and producers accounting for the largest volume of the subject merchandise from the exporting country that can be reasonably examined." For the reasons described in more detail below, because the record does not support that the "Type 3" import data were reliable, Commerce's methodology is not a reasonable interpretation of the statute pursuant to the

standard of review established under the second prong of <u>Chevron U.S.A. v. Natural Res. Def. Council, Inc.</u>, 467 U.S. 837, 842-43 (1984) (holding that an agency's interpretation of its statutory mandate must be "reasonable.").

Accordingly, Commerce's determination to employ "Type 3" CBP import data as the basis for the selection of mandatory respondents should be reviewed under the standards set forth in <u>SKF USA Inc. v. United States</u>, 263 F.3d 1369 (Fed. Cir. 2001) and the second prong of <u>Chevron U.S.A. v. Natural Res. Def. Council, Inc.</u>, 467 U.S. 837 (1984).

<u>Factual:</u>  In the proceeding below, AHSTAC demonstrated that the "Type 3" CBP import data:  (1) identified manufacturers of subject merchandise and did not identify exporters; (2) contained multiple obvious errors in the names of the manufacturers identified; (3) provided no information regarding affiliations between the manufacturers identified; and (4) had been demonstrated in a parallel administrative review to not be co-extensive with entries of subject merchandise during the administrative review period.  Commerce responded to AHSTAC's arguments by declaring a presumption that "Type 3" CBP import data were reliable for the purposes of the selection of mandatory respondents in the absence of a specific demonstration that the data on the record of the review was inaccurate to a significant degree.  ID Memorandum at 9-10.  As such, Commerce's determination to rely on "Type 3" CBP import data was not based on information on the record demonstrating that such data were reliable.  Instead, Commerce's reliance was premised on a presumption of reliability and, accordingly, was not supported by substantial evidence on the record of the administrative review.

For this reason, in addition to the review standards discussed above, Commerce's determination to employ "Type 3" CBP import data should be reviewed under the standard set forth in <u>Universal Camera Corp. v. National Labor Relations Board</u>, 340 U.S. 474, 488 (1951)

(holding that agency action must be supported by substantial evidence on the record and that the "substantiality of evidence must take into account whatever in the record fairly detracts from its weight.").

## B. Issue Number 2:  CEP Offset

### 1. Statement of the Issue

Commerce erroneously granted a constructed export price ("CEP") offset to the Rubicon Group in the administrative review.

### 2. Type of Claim, Statutory or Regulatory Basis for Claim and Standard of Review

Commerce's decision to grant the Rubicon Group a CEP offset to normal value ("NV") pursuant to 19 U.S.C. § 1677b(a)(7)(B) (2000) was unsupported by substantial evidence on the record and was otherwise not in accordance with law.  19 U.S.C. § 1516a(b)(1)(B)(i) (2000).

AHSTAC similarly challenged the grant of a CEP offset to the Rubicon Group's normal value in an appeal of the preceding administrative review of the same antidumping duty order.  This Court addressed AHSTAC's arguments and found that Commerce's grant of a CEP offset was supported by substantial evidence in Pakfood Public Co. Ltd. v. United States, 2010 Ct. Intl. Trade LEXIS *15-38, Slip. Op. 10-99 (Sept. 1, 2010).  In that case, the Court found:  (1) that Commerce's determinations to deny a CEP offset to the Rubicon Group in prior administrative proceedings "do not serve as precedent controlling its conclusions in the instant review"; (2) the agency "did not act contrary to its established practice by not giving more weight to Rubicon's {indirect selling expense} ratios as part of its {level of trade ("LOT")} analysis in this review"; and (3) Commerce's finding that the Rubicon Group's sales to its comparison market were at a LOT that was more remote from the factory than the LOT of the respondent's CEP sales "was supported by substantial evidence on the record of the third review."  Id. at *31, *36, and *37.

The Court's decision in Pakfood Public Co. Ltd. v. United States is not yet final, as there has not yet been an opportunity for review by the Court of Appeals for the Federal Circuit ("CAFC"). See Usinor Industeel, S.A. v. United States, 27 C.I.T. 238, 240 (2003) (Court decision not final because remand not completed "much less reviewed by this court or the CAFC.").

In the administrative review proceeding at issue here, Commerce stated that the agency "continue{s} to find that a CEP offset is warranted for the Rubicon Group in this review." ID Memorandum at 35. The determination to grant a CEP offset to the Rubicon Group in this review, as in the preceding administrative review, should be reviewed under the standard set forth in Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 488 (1951) (holding that agency action must be supported by substantial evidence on the record and that the "substantiality of evidence must take into account whatever in the record fairly detracts from its weight.").

**C.  Issue Number 3:  Sauce Value**

1. Statement of the Issue

Commerce erroneously accepted the Rubicon Group's reporting of gross unit prices inclusive of the value of sauce added to the shrimp, but exclusive of the weight added to the product, resulting in an unreasonable overstatement of gross unit price.

2. Type of Claim, Statutory or Regulatory Basis for Claim and Standard of Review

Legal:  Commerce's decision to accept the Rubicon Group's reporting of gross unit prices inclusive of the value of sauce added to shrimp, but exclusive of the weight of the sauce was unsupported by substantial evidence on the record and was otherwise not in accordance with law.  19 U.S.C. § 1516a(b)(1)(B)(i) (2000).

For sales of products containing sauce or glaze, the Rubicon Group's reporting of its gross unit price calculated such prices by dividing the invoice value of the shrimp (inclusive of the value of the sauce added to the shrimp) by the weight of the shrimp that did not include the weight of the sauce.  ID Memorandum at 38.  In its case brief to Commerce, AHSTAC observed that this reporting methodology inappropriately overstated the gross unit price of the Rubicon Group's products containing sauce or glaze.  AHSTAC Case Brief, p. 16, P.R. 210.

In its final results, Commerce did not contest AHSTAC's claim that the Rubicon Group's reporting overstated gross unit prices.  Commerce nevertheless accepted the Rubicon Group's reporting, finding:

> For purposes of the final results, we have continued to accept the Rubicon Group's reported gross unit prices which include sauce value, but do not include sauce weight.  We are unable to revise the Rubicon Group's reported gross unit prices at this time without seeking additional information from the respondent.  Had the Domestic Producers made this argument at an earlier stage in the proceeding, i.e., prior to the submission of case briefs, we would have been able to more fully consider such an adjustment.  Accordingly, we will continue our practice of including sauce value in the gross unit price in our final results margin calculations.

ID Memorandum at 38.

Commerce did not provide an explanation as to what additional information would be required in order to avoid an overstatement of gross unit prices, nor why obtaining such additional information was precluded at that point of the proceeding.  In the administrative proceeding, AHSTAC requested that Commerce adjust the Rubicon Group's gross unit prices to remove sauce value from the invoice value used as the numerator.  AHSTAC Case Brief, p. 16, P.R. 210.  In response, as noted by Commerce, "the Rubicon Group maintains that the only alternative to its current methodology would be to report gross unit prices including sauce weight."  Id. at 37 (Commerce additionally summarized the respondent's arguments for why the Rubicon Group believed that such an adjustment would be distortive).  As such, both AHSTAC

and the Rubicon Group appear to have agreed that an adjustment of the Rubicon Group's gross unit prices to avoid overstatement was possible (although the Rubicon Group also believed that such an adjustment would be inappropriate), but Commerce nevertheless declined to address the overstatement of the Rubicon Group's gross unit prices.

Commerce's failure to adjust the Rubicon Group's gross unit prices for products with glaze or sauce is not a reasonable interpretation of the statute pursuant to the standard of review established under the second prong of Chevron U.S.A. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43 (1984) (holding that an agency's interpretation of its statutory mandate must be "reasonable."). Further, because Commerce failed to identify the additional information necessary to revise the Rubicon Group's reported gross unit prices, Commerce's decision to accept the Rubicon Group's reported prices should be reviewed under the standard set forth in Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 488 (1951) (holding that agency action must be supported by substantial evidence on the record and that the "substantiality of evidence must take into account whatever in the record fairly detracts from its weight.").

**D.  Issue Number 4:  Pakfood's Home Market Billing Adjustments**

AHSTAC hereby withdraws Count Four of the Complaint dated October 7, 2010 and will not brief this issue.

Respectfully submitted,

  /s/ Nathaniel Maandig Rickard  
Andrew W. Kentz  
Nathaniel Maandig Rickard  
**PICARD KENTZ & ROWE LLP**  
1750 K St., N.W.  
Suite 1200  
Washington, DC 20006  
(202) 331-5040  
*Counsel to the Ad Hoc Shrimp Trade Action Committee*

Dated:  January 6, 2011

# PUBLIC CERTIFICATE OF SERVICE
## AD HOC SHRIMP TRADE ACTION COMMITTEE
## v. UNITED STATES
## COURT NO. 10-00297

I, Nathaniel Maandig Rickard, hereby certify that a copy of the foregoing submission was served on this 6th day of January 2011, by electronic delivery through the CM/ECF system, on the following parties:

**On behalf of the United States:**

Joshua Ethan Kurland
**U.S. DEPARTMENT OF JUSTICE**
Commercial Litigation Branch - Civil Division
1100 L Street, N.W.
Room 12020
Washington, DC 20530

**On behalf of Andaman Seafood Co., Ltd., Chanthaburi Frozen Food Co., Ltd., Chanthaburi Seafoods Co., Ltd., Phatthana Frozen Food Co., Ltd., Phatthana Seafood Co., Ltd., Thailand Fishery Cold Storage Public Co., Ltd., Thai International Seafoods Co., Ltd., Wales & Co. Universe Ltd., Sea Wealth Frozen Co., Ltd., and Rubicon Resources, LLC:**

Walter J. Spak, Esq.
**WHITE & CASE**
701 13th Street, NW
Washington, DC 20005

**On behalf of Pakfood Public Company Limited, Asia Pacific (Thailand) Company Limited, Chaophraya Cold Storage Company Limited, Okeanos Company Limited, Takzin Samut Company Limited, and Okeanos Food Company Limited:**

Robert George Gosselink
**TRADE PACIFIC, PLLC**
719 A Street, NE
Washington, DC 20002

    __s/ Nathaniel Maandig Rickard____
Nathaniel Maandig Rickard
**PICARD KENTZ & ROWE LLP**
*Counsel to Ad Hoc Shrimp Trade Action Committee*